## Murphy *versus* Crossan.

1. Where an employer is informed that certain machinery upon his premises, out of sight of his employés, is in a dangerous condition, and he takes steps to renew the same, but before the renewal is made, one of the employés, having no notice of the dangerous condition of the machinery, is injured by its breaking in the ordinary course of his employment, in a suit by the employé, the question of the employer's negligence must be submitted to the jury.

2. A., being the owner of a hotel, was informed by the engineer of the baggage elevator that the wire rope sustaining it was in bad condition and would have to be renewed. A. accordingly, shortly afterwards, ordered a new rope to be made. During the process of its manufacture, and before completion, the elevator was run as usual, the baggage porter in charge thereof not being informed of the condition of the rope. Said rope was so situate that the porter could neither see it nor judge of its condition. While engaged in lowering trunks on said elevator in the ordinary course of his employment, said porter was injured by an accident, occasioned through the breaking of the rope. Suit having been instituted by him against A. to recover damages for his injuries alleged to have been occasioned by the defendant's negligence,—*Held*, that it was under the circumstances error to nonsuit the plaintiff, there being evidence of negligence on the part of the defendant which should have been submitted to a jury.

3. In such case, the jury should have been instructed that the defendant was not an insurer of the soundness of the rope, and that the measure of his duty was reasonable care.

October 7th 1881. Before Sharswood, C. J., Mercur, Paxson, Trunkey, Sterrett and Green, JJ. Gordon, J., absent.

Error to the Court of Common Pleas No. 2, of *Allegheny county:* Of October and November Term 1881, No. 218.

Case, by Terence Murphy against J. McDonald Crossan, to

recover damages for injuries suffered by the plaintiff, caused, as alleged, by the defendant's negligence. Plea, not guilty.

On the trial, before WHITE, J., the plaintiff's evidence was to the following effect:—The plaintiff was a porter in the employ of the defendant, who is the proprietor of the Monongahela House in the city of Pittsburgh. As such it was his duty to take baggage up and down in a baggage elevator, the carriage of which was raised and lowered by steam power, by means of a wire rope 165 feet long, attached to the carriage and to a revolving drum in the cellar connected with the engine. This rope was concealed from view. On April 25th 1877, the plaintiff placed upon the elevator, at an upper story, two trunks, each weighing about 350 pounds, and some small baggage, and, with an attendant, started the elevator downwards. This was not an unusually heavy load. When about 37 feet from the ground floor the rope broke, precipitating the elevator with its contents into the cellar. The plaintiff was injured, having his jaw bone broken, and suffered other injuries. He was confined to bed for about two weeks, and resumed his work at the elevator in about a month. The defendant paid all expenses incidental to the plaintiff's illness. After remaining in the same employment for about a year, the plaintiff left and brought this suit.

The engineer in charge of the elevator testified that it had been customary to renew the rope at intervals of about a year; that the rope in question had been in use only nine or ten months, but that it had been spliced and he did not consider it very safe; that about six or eight weeks prior to the accident he reported its condition at the office; "said that the rope was getting bad, and we would have to get a new one;" that again, eight or ten days prior to the accident, he told the defendant that "he would have to get a new rope, for that one was worn out, and Mr. Crossan told me that he had seen it, and that he had ordered a new one." The new rope was delivered at the hotel on the same day or the day after the accident happened.

At the close of the plaintiff's case the defendant moved for a nonsuit, on the ground that there was no sufficient evidence of the defendant's negligence, and because the plaintiff had better opportunity of knowing the condition of the elevator and the rope than the defendant.

The court granted the nonsuit, and subsequently refused a motion to take it off, whereupon the plaintiff took this writ of error, assigning for error the refusal of the court to take off the nonsuit.

*Fitzpatrick* and *Parkinson* (*Breil* with them), for the plaintiff in error.—There was evidence of defendant's negligence

[Murphy *v.* Crossan.]

in permitting to be used a rope the defectiveness of which had been brought to his notice, and such negligence was the direct cause of the accident. In such case the question of negligence is always for the jury and not for the court: Johnston *v.* Bruner, 11 P. F. Smith 58 ; Paterson *v.* Wallace, 28 Eng. Law & Eq. Rep. 48, 51. An employer is bound to provide his laborers with safe machinery, and if he is negligent in this respect he is liable, even if the injury result from the act of a fellow servant: Wood's Law of Master and Servant, 681 ; Mullan *v.* Steamship Co., 28 P. F. Smith 25 ; Patterson *v.* P. & C. R. R. Co. 26 Id. 389 ; Ryan *v.* Fowler, 24 N. Y. 410 ; Oak Ridge Coal Co. *v.* Reed, 5 W. N. C. 3. If the tool or machinery be perishable the employer is bound to know that fact, and to renew it at proper intervals : Baker *v.* Allegheny V. R. R. Co., 9 W. N. C. 337.

*Thos. M. Marshall,* for the defendant in error.—The defendant provided the best elevator, and put it in charge of a skilled engineer. On notice that the rope was wearing, he ordered a new one, which arrived on the day of the accident. The safety or danger of running the old one in the meantime was a matter in the discretion of the engineer, a fellow-servant with the plaintiff. The master did his whole duty ; if there was any negligence, it was by the engineer. A mere scintilla of evidence connecting the defendant with the injury is insufficient to take the case to the jury, and the court rightly granted a nonsuit. The plaintiff did not allege negligence until more than a year after the accident, when he left his employment in consequence of a dispute with the clerk.

Mr. Justice Paxson delivered the opinion of the Court, October 24th 1881.

We think it was error to nonsuit the plaintiff. There was evidence that the defendant had been notified some time before the accident that the wire rope used for the baggage elevator was worn out: The defendant replied that he had seen it ; the rope was bad, and that he had ordered a new one. In the meantime he continued to use the old rope, and, so far as the testimony shows, without any examination to ascertain whether it would be safe to use it until the arrival of the new one, and without informing the plaintiff, who was a baggage-porter employed in taking baggage up and down on the elevator, that it was unsafe, or giving him any caution to use it with more care, or carry lighter loads. It is to be observed that the rope was so situated that the plaintiff could not see it or judge of its condition.

2 Outerbridge.—32

[Cauley *v.* Pittsburgh, &c. Railway Co.]

Under these circumstances we think the defendant assumed the risk of the breaking of the rope. It is true he was not an insurer of its soundness. He is to be held to the rule of reasonable care, and may be able to satisfy a jury that he has done all that such a rule requires. All we decide is that the evidence was sufficient to carry the case to a jury.

Judgment reversed, and a venire facias de novo awarded.